COUNTY OF ALLEGHENY (DE-PARTMENT OF AVIATION),
Petitioner

v.

WORKERS' COMPENSATION BOARD OF APPEAL (JERNSTROM),
Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 26, 2003.

Decided April 22, 2004.

Bradley R. Andreen, Pittsburgh, for petitioner.

Darren K. Parr, Pittsburgh, for respondent.

BEFORE: COLINS, President Judge, and LEAVITT, Judge, and KELLEY, Senior Judge.

OPINION BY Judge LEAVITT.

The County of Allegheny, Department of Aviation (Employer) appeals from the adjudication of the Workers' Compensation Appeal Board (Board) granting the claim petition of Robert Jernstrom (Claimant). In doing so, the Board affirmed the decision of the Worker's Compensation Judge (WCJ) that Claimant met his burden of proving that his injury of asbestosis was compensable because he had been employed in an occupation having an asbestos hazard for two out of the ten years preceding his disability.

This case began on August 14, 1996, when Claimant filed a claim petition alleging that he sustained asbestosis in the

course of his employment as a steamfitter. Claimant alleged that he sustained this injury as a result of longstanding and continuous exposure to asbestos in the workplace, resulting in disability as of August 7, 1996, when he underwent a lung transplantation. Employer denied the material allegations in the claim petition, and a hearing was held before a WCJ.

The relevant facts found by the WCJ are as follows. Claimant, now deceased,[1] worked continuously as a steamfitter from 1952 until 1994, when he retired. In this employment, he used materials containing asbestos, including pipe insulation, block insulation, brackets and cement, and in using them he often worked in confined spaces such as boiler rooms. Even after asbestos was no longer used in these materials, Claimant continued to work with piping covered in asbestos wrapping that had been installed before the hazards of asbestos were well understood. From 1952 until his retirement on March 31, 1994, Claimant worked for a number of different employers[2] before ending his working career with Employer. The WCJ found that there was no question that Claimant had asbestosis and that it was caused by cumulative exposure to asbestos in the workplace. It was undisputed that Claimant was disabled as of August 7, 1996. The question was whether Employer was responsible for workers' compensation benefits.

To consider whether Employer was liable, the WCJ examined Claimant's work history to determine whether he had worked at an occupation that had an asbestos hazard for at least two years during his final decade of employment, i.e., 1984 to 1994. Accordingly, the WCJ examined Claimant's work history in two blocks of time: (1) 1952 to 1984 and (2) 1984 to 1994. The WCJ found that most of Claimant's exposure to asbestos in the workplace occurred between 1952 and the mid–1970s. Claimant went to work for Employer on March 13, 1989, and he stayed there until his retirement on March 31, 1994. Between 1989 and 1992, Claimant worked at the Greater Pittsburgh Airport. After 1992, he worked principally at the Pittsburgh International Airport but, on occasion, he was sent to the Allegheny County Airport and the Greater Pittsburgh Airport. Claimant conceded that he was not exposed to asbestos at the Pittsburgh International Airport; however, he was exposed to asbestos at the other airports where he worked in the maintenance of asbestos-laden pipes, gaskets and insulation.

With respect to the period of 1984 to 1989, the WCJ found that Claimant's total period of exposure to asbestos was six months. For the period spent with Employer, 1989 to 1994, the WCJ found seven and one-half months of exposure to asbestos. He made this finding principally on the basis of Claimant's witness, Robert Groves, who worked with Claimant almost daily from 1989 to 1994. The 13½ months of exposure fell short of the 24 months required by statute, even though the WCJ gave, in his words, "liberal credit" to the evidence about Claimant's exposure to asbestos during his work for Employer from 1989 to 1994.[3] Thus, the WCJ denied the claim petition.

---

1. Most of this work history was derived from Claimant's October 30, 1996 deposition.

2. They include a variety of steel companies, Montefiore Hospital and even Employer, for whom Claimant worked from 1969 to 1972, at the Greater Pittsburgh Airport.

3. The WCJ found as follows:

   I find the testimony of Mr. Groves to be much more persuasive [than Claimant's] in quantifying the level of exposure to asbestos during the time he worked with claimant. His testimony was very persuasive that he worked with the claimant approximately

Claimant appealed the decision to the Board, which held that the WCJ had mis-applied the applicable statutory provision, Section 301(d) of the Workers' Compensation Act.[4] The Board held that the asbestos "exposure" quantified by the WCJ was irrelevant. Claimant's burden was to show two years of employment in an *occupation* having an asbestos hazard, and it was not necessary, as the WCJ had believed, to show actual, daily physical exposure to asbestos during those two years. Further, the Board held that the relevant ten year period was the ten years preceding Claimant's disability, which the WCJ had found to be August 7, 1996. Thus, the Board remanded the matter for further proceedings consistent with its opinion.

■ Upon remand, the WCJ found, in relevant part, as follows:

(3)(a) I do not find claimant's testimony credible in the conclusory answer that claimant was exposed for two years out of 10 years to asbestos-containing materials.... Although I credit portions of claimant's testimony, this conclusory and self-serving statement is not credible when weighed with all the evidence of

claimant's employment and exposure to asbestos.

* * *

(c) From March, 1989 until September, 1992, is a period of 44 months.... Even crediting claimant with 5%, testified to by claimant's coworker Robert Groves, of the 44 months, that is 2.2 months of actual exposure to asbestos. "Occupation" is defined as "an activity in which one engages." *Webster's Ninth New Collegiate Dictionary* (Merriam–Webster, Inc. 1988). Even attempting to view the inquiry as whether claimant was engaging in an occupation with asbestos exposure, there is no credible evidence in other than the times which I credit either, as the case may be, by claimant's or Mr. Groves testimony set forth in finding of fact #4, finding of fact #7, and finding of fact 8(b) in the 1997 decision. Again, claimant's testimony merely to the effect that he had two years out of ten years employment in an occupation with a potential asbestos hazard is not credible. Claimant argues that he had "constant asbestos exposure" while working during this period of time and that he had 42 months

95% of the time. Mr. Groves' testimony establishes that 20 to 25% of the time he worked with the claimant they worked in boiler rooms and 20 to 25% of the time he worked in air handling areas. In each of those locations, Mr. Groves testified that the exposure to asbestos was 5% of that time. Even crediting the claimant with the highest number, 5% of the claimant's time from March, 1989 through September, 1992 was spent in exposure to asbestos. During that approximate year and a half period, 5% of approximately a 20 month period results in one month of exposure. Mr. Groves also testified to he and the claimant working approximately ten times in air tunnels. He testified that three times the air tunnels were exposure of six hours each and 7 times one hour. Even taking into account [Claimant's] testimony and

correlating that with Mr. Groves'' testimony, and being very liberal and giving the claimant credit for six months of exposure to asbestos during the time he worked for the employer, claimant is well short of two years in exposure in the last ten years. Even attempting to read the testimony in most favorably to the claimant, I do not find the evidence supports that claimant had two years out of the previous ten years of exposure to an asbestos hazard, pursuant to Section 301(d) of the Workers Compensation Act.

WCJ Decision of December 9, 1997, Finding of Fact No. 9.

4. Section 301(d) of the Act of June 2, 1915, P.L. 736, added by the Act of October 17, 1972, P.L. 930, *as amended,* 77 P.S. § 412 (Act).

of employment, arriving at a calculation of 21 months of exposure ... *The only conceivable way to arrive at that conclusion is to equate that employment with the County of Allegheny, as an occupation involving employment with a potential and theoretical exposure to a hazard all the working time.* ... I interpret the WCAB remand instructions to include all 44 months as "employment" based apparently on the reasoning that all 44 months potentially and theoretically exposed claimant to asbestos, on the theory that on any day of the 44 months claimant could have potentially been assigned to asbestos exposure. (d) Claimant argues that he had three months of exposure from September 21, 1992 through March 31, 1994. Claimant testified to having intermittent work at the "old airport." However, his occupation involved primarily working during that period of time at the "new airport," namely Pittsburgh International Airport. *The only way to quantify that period of time as an occupation in employment with an asbestos hazard is to view that claimant potentially and theoretically had an asbestos exposure hazard when he could go to the "old airport."* At most, his "occupation" was intermittently employment at a location having an asbestos hazard. This is based on claimant testifying to 8 to 10 times, up to three days in a row, where claimant worked at the "old airport." I interpret the WCAB remand instruc-

tions to include all three months as "employment," based apparently on the theory that all three months potentially and theoretically exposed claimant to asbestos.

Finding of Fact No. 3 (emphasis added). Consistent with these findings, the WCJ found that Claimant established that he had been employed for a total of 53 months in an occupation "potentially involving" an asbestos hazard.[5] Using the Board's interpretation of Section 301(d) of the Act, the WCJ concluded that the claim petition should be granted. The Board affirmed. Employer then petitioned for this Court's review.[6]

■ On appeal, Employer argues, first, that the Board erred as a matter of law by reducing Claimant's burden of proof to one of "potential exposure" instead of "actual exposure" to the asbestos hazard. Second, it argues that both the WCJ and the Board erred because the mathematical formula used by the WCJ in his 1997 decision was the correct standard, and, further, the evidence presented by Claimant was not sufficient to satisfy this more exacting standard.[7] Finally, Employer argues that the Board erred by disregarding the credibility determinations made by the WCJ concerning the Claimant's actual exposure to asbestos.

■ In an occupational disease case, a claimant has the burden of proving all the necessary elements to support an award of benefits under the Act. *Ferraccio v. Work-*

---

5. Six months of this employment was with a previous employer; the remainder was with Employer. The WCJ found that Claimant was employed in a hazardous occupation for 44 months out of the period 1989 to 1992, and for 3 months out of the period of 1992 to 1994.

6. Our scope of review is limited to a determination of whether an error of law was committed, constitutional rights were violated or

necessary findings of fact are not supported by substantial evidence. *Witco–Kendall Co. v. Workmen's Compensation Appeals Board (Adams)*, 127 Pa.Cmwlth. 509, 562 A.2d 397 (1989).

7. Claimant testified that while working for Employer, he was exposed to asbestos every day. This testimony, to the extent it conflicted with that of Mr. Groves, was not credited.

*men's Compensation Appeal Board (Intech Construction Co.),* 166 Pa.Cmwlth. 169, 646 A.2d 65 (1994). Section 301(d) of the Act provides as follows:

> Compensation for silicosis, anthraco-silicosis, coal worker's pneumoconiosis or asbestosis, shall be paid only when it is shown that the employe has had an aggregate employment of at least two years in the Commonwealth of Pennsylvania, during a period of ten years next preceding the date of disability, in an occupation having a silica, coal or asbestos hazard.

77 P.S. § 412. Section 301(d) establishes the threshold requirement for occupational disease benefits. *Ferraccio,* 646 A.2d at 67. As this Court has found, Section 301(d) "requires a claimant to prove nothing more than employment for the stated number of years in an occupation having such a hazard." *Westinghouse Electric Corporation v. Workmen's Compensation Appeal Board (Phillips),* 96 Pa.Cmwlth. 45, 506 A.2d 978, 979 (1986).

Employer argues, however, that *Westinghouse* is an aberration and not consistent with the long history of case law holding that there must be actual exposure in order to establish an occupational hazard under Section 301(d) of the Act. Employer contends that finding that a hazard exists where there is only potential for asbestos exposure will burden some employers unfairly.[8] The question, then, is how to measure that exposure in order for a claimant to show "the stated number of years in an occupation having such a hazard." *Westinghouse,* 506 A.2d at 979.

·It is certainly true, as argued by Employer, that the case law interpreting Section 301(d) of the Act, has consistently made reference to *exposure* to the hazard, not simply the potential for exposure. In *Bingaman v. Baldwin Locomotive Works,* 159 Pa.Super. 29, 46 A.2d 512, 514 (1946) (emphasis ·added), the Court explained as follows:

> [w]e desire to make it clear that in our opinion that employment in an occupation having a silica hazard, Section 301(d) of the Act, 77 P.S. 1401(d), exists only where an employee is *subject to the hazard of exposure* to the dust of silicon dioxide.

*See also Tokash v. Early Foundry Co.,* 157 Pa.Super. 467, 43 A.2d 553, 553 (1945) (emphasis added) (affirming· the Board's decision that the "aggregate of the Claimant's·*exposure* to such (silica) hazard," was less than statutory period); *Kraesko v. Black Lick Mining Company,* 175 Pa.Super. 455, 106 A.2d 665, 667 (1954) (emphasis added) (affirming award of benefits noting the "*actual exposure* of the Claimant to silica hazards throughout the entire term of his employment."). Our holding in *Westinghouse,* however, is not a "mere aberration" but, rather, consistent with these holdings.

■ In *Westinghouse,* we affirmed the Board's holding that the claimant had established by employment with several employers an aggregate of two years in a hazardous occupation in satisfaction of Section 301(d) of the Act.[9] The employer

---

8. For example, an employee may be exposed to asbestos on a daily basis during 20 years of work with employer (A), and thereafter, exposed to asbestos only 1% during the 10 years with employer (B). Under what Employer calls the "potential exposure" rule, employer B would be liable for the workers' compensa-

tion benefits in the event the employee develops asbestosis.

9. A claimant may aggregate periods of exposure in order to reach the required aggregate; he may not include in the computation period of employment, periods of different and nonhazardous occupation because he happens to have the same employer for both jobs. *Binga-*

argued that in his work as a millwright, the claimant was actually exposed to asbestos only in two jobs for a total of 14 months. We disagreed, holding that

> the express language of Section 301(d) requires a claimant to prove nothing more than employment for the stated number of years in an occupation having such a hazard. And, as the referee here found, the claimant was employed as a millwright in Pennsylvania from 1945 through 1975 and, *during all of that time that he spent in that employment, he was exposed to an asbestos hazard.*

*Westinghouse,* 506 A.2d at 979–980 (emphasis added). Contrary to Employer's assertion, then, actual exposure to a hazard remains an element of a claimant's burden of proof. Here, it is undisputed that during the relevant ten-year period, Claimant established continued exposure to the occupational hazard of asbestos.[10] However, Employer argues that it was Claimant's burden to show that his exposure was "substantial," as well as constant, using the mathematical formula used by the WCJ in the 1997 decision that was remanded by the Board. We disagree.

In *Milavech v. Berwind–White Coal Mining Co.,* 180 Pa.Super. 194, 119 A.2d 652 (1956), the Superior Court was called upon to determine whether a claimant was exposed to an occupational hazard of sufficient duration to warrant compensation under the then-existing occupational disease statute.[11] In that case, the claimant

had been employed for four and one-third years working in a mine, during which time he was exposed to the hazard of silica. The employer argued that the claimant did not meet the four-year threshold because the claimant had been absent on many days due to illness, days off and mine closings. The Superior Court rejected this mathematical approach to calculating the statutory four-year period of hazardous employment. It reasoned as follows:

> Section 301(d) does not require a claimant to show an aggregate of four 365–day years in order to qualify.... The Legislature ... provided the four year minimum period as the line below which disability would not be considered as having resulted from exposure. *The provision, however, is a general one, lacking explicit instructions on its application to specific cases.* Consequently it is necessary in each case to determine each claim on the basis of its particular facts, keeping constantly in mind the humane purpose of the Act and the mandate to construe and apply it liberally.... *When the cause and effect are adequately shown, as they have been here ... the time provisions are not to be applied with undue strictness.* Individual cases, like individual disabilities, must be individually determined. The Legislature intended no strict and unreasonable, cold and arbitrary measure of providing compensation....

man v. Baldwin Locomotive Works, 159 Pa.Super. 29, 46 A.2d 512 (1946). This means, for example, that an employee who works ten years for a coal mining company will not satisfy the two-year rule if nine of those ten years are spent doing office work at the company's corporate headquarters.

10. The issue of whether a hazard exists is a question of fact. *A.C. Moyer Co. v. Workmen's Compensation Appeal Board (Bryner),* 67 Pa. Cmwlth. 50, 445 A.2d 1354 (1982).

11. Section 302(d) of the Pennsylvania Occupational Disease Act, Act of June 21, 1939, P.L. 566, 77 P.S. 1401(d), provided, "Compensation for silicosis ... shall be paid only when it is shown that the employe has had an aggregate employment of at least four years in the Commonwealth of Pennsylvania during a period of eight years next preceding the date of disability, in an occupation having a silica ... hazard."

*There can be no set mechanical formula laid down which must be applied with mathematical certainty in each and every case,* striking down those which fall just below the line and compensating those who come just above it. Nor can we set forth any percentage formula applicable to all cases ... *Such an arbitrary mechanical system would be unreasonable and unfair, in addition to bearing no relationship whatever to a determination of the cause and effect aspect of silicosis.*

*Milavech,* 119 A.2d at 654–5 (emphasis added).[12]

We agree with this logic. As in *Milavech,* we decline to adopt the mechanical and mathematical approach advanced by Employer to determine whether a claimant labored for two years in an occupational hazard. The WCJ found that Claimant established exposure to the hazard of asbestos throughout his employment with Employer. Even after 1992, when his principal place of work was the Pittsburgh International Airport, he continued to be sent to the other, older airports where asbestos was present. Claimant's exposure to asbestos in the workplace may

have been reduced after 1975, but it was never eliminated. It is undisputed that Claimant's asbestosis was caused by years of handling asbestos materials in the workplace. We do not believe it was Claimant's burden under Section 301(d) of the Act to reconstruct each day of the statutory two-year period to show the presence of asbestos in the workplace on a daily basis and in a specified degree. Indeed, such a construction of Section 301(d) would be inconsistent with the remedial nature and humanitarian objectives of the Act, requiring that its provisions be liberally construed. *Krawchuk v. Philadelphia Electric Company,* 497 Pa. 115, 439 A.2d 627 (1981).[13]

We hold that Claimant met his burden of showing that his asbestosis was compensable. Claimant was employed for two years (out of the ten years preceding his disability), in Pennsylvania in the same occupation, *i.e.,* steamfitting, and this occupation exposed him to an asbestos hazard. The fact that the degree of the hazard may have declined over his 42 year career does not change the fact that Claimant was exposed to an asbestos hazard throughout that career.[14]

---

12. *See also Crandall v. Downingtown Iron Works,* 188 Pa.Super. 1, 146 A.2d 312 (1958).

13. Employer's final argument on credibility is without merit. Although couched as a challenge to a credibility determination of the WCJ, it is really another argument in support of a mathematical calculation of exposure. Claimant argues that a 5% exposure over the relevant 44 month period only constitutes 13.75 months of actual exposure. Assuming the mathematical calculation is correct, it is of no moment given our disposition of this matter as more fully addressed above.

14. We agree that if an occupation does not have any exposure to asbestos, then there is no hazard. Accordingly, not all steamfitters are employed in an occupation with an asbestos hazard. Working in a moonsuit, hypothetically, could eliminate any asbestos exposure. As the Superior Court noted in

*Milavech,* it is necessary to evaluate each claim of an occupational hazard on its facts. The time requirements should take second place to the central inquiry of cause and effect of the injury.

We recognize also that the asbestos occupational hazard presents a factual challenge unlike that presented by silica. Coal dust is not ubiquitous; it is in coal mines. By contrast, asbestos is ubiquitous. Here, there was no question that Claimant's asbestosis was caused by working with asbestos materials and breathing asbestos dust in his work as a steamfitter. *Ferraccio v. Workmen's Compensation Appeal Board (Intech Construction Co.),* 166 Pa.Cmwlth. 169, 646 A.2d 65 (1994), is instructive for cases where the "cause and effect" is not obvious. In that case, this Court rejected the claimant's petition because he could not show that his lung cancer, caused by cigarette smoking and allegedly asbestos,

Accordingly, the decision of the Board is affirmed.

**ORDER**

AND NOW, this 22nd day of April, 2004, the May 16, 2003 order of the Workers' Compensation Board of Appeal in the above-captioned case is hereby affirmed.

was related to his occupation. The record showed that the claimant worked as a project supervisor for a construction company for 16 months. During one five-week project to which the Claimant was assigned, asbestos abatement was done by subcontractors using state-of-the-art removal processes. This evidence showed that there was no exposure to the asbestos hazard. Stated otherwise, it may be appropriate, in some cases, to quantify the amount of asbestos hazard even under Section 301(d) of the Act.