IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Garrison Architects and Travelers : 
Insurance Company, : 
               Petitioners : 
                : 
            v. :   No. 1095 C.D. 2015
                :   Submitted: October 23, 2015
Workers' Compensation Appeal : 
Board (Piatetsky), : 
             Respondent : 


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
               HONORABLE MARY HANNAH LEAVITT, Judge[1]
               HONORABLE ANNE E. COVEY, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE LEAVITT                        FILED: January 22, 2016

      Garrison Architects (Employer) and Travelers Insurance Co., petition for review of the adjudication of the Workers' Compensation Appeal Board (Board) awarding fatal claim benefits to Randi Hoffman (Claimant) for the death of her husband, Michael Piatetsky. In doing so, the Board affirmed the decision of the Workers' Compensation Judge (WCJ) that Piatetsky's fatal cancer was caused by exposure to asbestos while working as an architect for Employer. Employer contends that the Board erred because Claimant's evidence did not support causation; further, the Board improperly refused to allow Employer's medical expert to testify. We affirm.

---

[1] This case was assigned to the opinion writer before January 4, 2016, when Judge Leavitt became President Judge.

On June 15, 2009, Claimant filed a fatal claim petition alleging that her husband's (Decedent) death from colon cancer was due to occupational exposure to asbestos. Claimant and Decedent were married in 1998 and had two children: Lissa, born in 1995 and Logan, born in 1999. Claimant sought fatal claim benefits for herself and her two children. Decedent died on October 18, 2006, at the age of 41.

Decedent had worked part-time for Employer throughout his high school and college years, while pursuing a degree in architecture. After becoming a licensed architect in the late 1980s, Decedent was appointed a project architect by Employer, and he continued in this position throughout his working life. Decedent worked only for Employer. At the time of his death, Decedent was earning approximately $100,000 per year.

Claimant testified that Decedent worked primarily on commercial projects involving the renovation of municipal and school buildings. On occasion, Decedent came home so covered in dust that he would immediately remove his clothes upon entering the house. He would wash the clothes separately from the family's laundry.

In May 2006, Decedent developed an uncomfortable feeling in his stomach. Later that month, he was hospitalized and diagnosed with advanced colon cancer. He died several months later.

Claimant testified that Decedent did not smoke and did not have a family history of colon cancer. His mother is still alive, and his father died from a stroke in 2007. Decedent's siblings remain cancer-free.

Claimant presented the testimony of Francis Baranyai, an architect employed by Employer from 1983 through 1996, when he retired. Baranyai

2

explained that Employer does both building design and construction. Baranyai, who often worked with Decedent, stated that approximately 80% of Decedent's work was industrial and the remainder was residential. Baranyai testified that Decedent visited job sites weekly.

Baranyai testified about his visit with Decedent in 1994 to the abandoned Camden County Municipal Building, a project of Employer. For two days, Decedent hammered the wall around a window in a prison cell in the building in an effort to understand the window construction. This generated a great deal of dust, but neither Decedent nor Baranyai wore a face mask. There were signs in the building, including the floor where they were located, that said "danger, asbestos." Baranyai Deposition, Notes of Testimony at 13 (N.T. __); Reproduced Record at 126a (R.R. __).

Claimant offered the deposition testimony of Robert Garrison, Jr., Employer's Director of Operations. Garrison's father founded the firm in 1969, which became a partnership in 1986. Decedent worked for the firm "from the late '80s up until his death," as a project manager architect. Garrison Deposition, N.T. 11; R.R. 166a. Garrison explained that Decedent worked on approximately 12 projects a year, making frequent trips to the project sites. Garrison conceded that Decedent worked at sites where asbestos was present and that "[f]rom time to time" Decedent was exposed to asbestos while at job sites. Garrison Deposition, N.T. 19; R.R. 174a. Garrison stated that on "rare occasions" Decedent would encounter asbestos while doing inspections. Garrison Deposition, N.T. 18; R.R. 173a.

Garrison testified that Employer retains business records for ten years and he did not believe that records produced before 2000 existed. He did find a

3

2001 inspection report authored by Decedent that reported asbestos at a job site undertaken for the School District of Philadelphia. Garrison was shown numerous documents reporting asbestos at job sites where Decedent was assigned. One such document was a report authored by Decedent that material from a collapsed ceiling in a school building appeared to be asbestos; this observation was later confirmed in tests. Garrison Deposition, N.T. 35, 190a. Regarding the documents, Garrison was asked:

> Q. And you would agree, sir, that in the thousands of documents that were made available for inspection which postdated the year 2000 … that there were many, many others with similar type notations about those types of findings.
>
> A. Yes.

Garrison Deposition, N.T. 36; R.R. 191a.

Garrison testified that whenever asbestos was discovered or suspected to be present at a job site, construction would shut down immediately until specialists conducted remediation. Employees would not be present during asbestos removal. Garrison testified that Decedent could not be exposed to asbestos at public buildings, including schools, because they cannot be open to the public until an asbestos study is done.

Claimant presented the expert medical testimony of Arthur L. Frank, M.D., Ph.D., who is board certified in internal and occupational medicine. He holds a doctorate in biology, specializing in the interaction of asbestos with cells. Dr. Frank serves as Professor of Public Health and Chair of the Department of Environmental and Occupational Health at Drexel University School of Public Health; Professor of Medicine at Drexel University College of Medicine; and Professor of Civil, Architectural and Environmental Engineering at Drexel

4

University College of Engineering. He was a commissioned officer in the United States Public Health Service for 37 years, assigned to the National Cancer Institute. Dr. Frank has studied the effects of asbestos for 40 years. He has authored 180 publications, of which at least half involve asbestos, and lectures extensively on the subject.

Dr. Frank stated that Decedent had no family history of colon cancer or colonic polyps and did not use tobacco products. Decedent's autopsy revealed adenocarcinoma of the colon that had metastasized. Decedent's cancer started on the right side of the colon, and Dr. Frank noted that one study has concluded that colon cancer caused by asbestos is more likely to begin on the right side.

Dr. Frank explained that asbestos causes cancer when the fibers physically interact with body tissues. When a person breathes in asbestos, the fibers travel to the lungs and, if swallowed with saliva, can eventually make their way to the colon. Many studies have demonstrated that asbestos causes genetic changes in cells that can lead to colon cancer. Dr. Frank acknowledged the existence of some studies questioning the connection between asbestos exposure and colorectal cancer, but Dr. Frank does not agree with them.

Dr. Frank testified that the latency period for colon cancer following exposure to asbestos is ten years, at the low end. He testified that Decedent's exposure appeared regular and ongoing because he routinely visited buildings where asbestos was present. He opined that Decedent's colon cancer resulted from his work-related exposure to asbestos.

Employer presented no witnesses at the hearing. The WCJ precluded Employer from presenting a medical expert because of its continual requests for continuances, even after the record closed. The WCJ credited Claimant and

5

Baranyai. The WCJ also credited Garrison, with the exception of his "guarantee" that Decedent had not been exposed to asbestos, which was contradicted by other evidence including his own testimony. The WCJ credited Dr. Frank's causation opinion. The studies cited by Dr. Frank drawing a connection between asbestos and colon cancer and Decedent's lack of predisposing factors supported Dr. Frank's conclusion. The WCJ noted that Dr. Frank conceded that not all studies supported his opinion, but the WCJ found this acknowledgment did not detract from Dr. Frank's opinion, which "simply makes sense." WCJ Decision of April 23, 2014, at 8.

The WCJ explained her decision to preclude Employer from presenting medical evidence after she took over the case from WCJ Martin Burman in December 2013. On January 30, 2013, Dr. Frank was deposed, giving Employer 90 days to depose its own medical expert.[2] Employer requested additional time and was given until September 16, 2013, to name its expert. By that point, WCJ Burman had set the briefing schedule, making Claimant's brief due October 16, 2013, and Employer's brief due 30 days thereafter. On August 25, 2013, WCJ Burman scheduled a hearing for November 26, 2013. Employer asked for a continuance, and the hearing was rescheduled to December 10, 2013.

On December 8, 2013, WCJ Burman died, and the matter was reassigned to WCJ Karen Wertheimer, who authored the decision under consideration here. At the December 10, 2013, hearing Employer requested additional time to depose its medical expert. The WCJ found that the only purpose

---

[2] "The deposition of a medical expert testifying for the responding party shall be taken within 90 days of the date of the deposition of the last medical expert testifying on behalf of the moving party." 34 Pa. Code §131.63(c).

6

of the December 10th hearing was to compel the submission of the parties' briefs, as the record was closed. She denied Employer's request, explaining:

> At [the] hearing, there was discussion which clearly showed a divergence of opinion as to the reason the hearing was held. Briefs on the issue were submitted, and after review of the history, it was abundantly clear that the only reason for the scheduling of [the hearing] was to compel the submission of briefs. The request by Employer for additional time to *generate*, not even *submit*, medical evidence was viewed by the undersigned as an attempt to take advantage of the passing of a Judge by hoping a substitute Judge would be unable to understand what had taken place before. Fortunately, the record speaks for itself and as Judge Burman intended to give no additional time, the undersigned, respecting his rulings, maintained his intentions. As a result of Employer's failure to comply with Judge Burman's rulings, it was precluded from submitting medical evidence.

WCJ Decision of 4/23/14 at 7 (emphasis in original).

Both parties appealed to the Board. Employer claimed it had been improperly precluded from presenting a medical expert and that Claimant did not meet her burden of proof. Claimant asked for a remand because the WCJ's decision did not include the average weekly wage or applicable compensation rate. The Board rejected Employer's appeal but granted Claimant's request for a remand to calculate specific benefits payable.

On remand, the record established Decedent's average weekly wage of $2,288.49 and a corresponding compensation rate of $745.00. In its appeal to the Board, Employer did not challenge this determination. It simply requested the Board to finalize its prior order so that Employer could appeal to this Court. The Board did so, and Employer petitioned for this Court's review.

7

On appeal, Employer raises four issues.[3]  First, it argues that Claimant's evidence was not sufficient to establish that Decedent had been exposed to asbestos.  Second, it argues that Claimant's medical expert based his opinion on flimsy medical studies.  Third, it argues that the Board relied on facts not of record when it stated that Claimant's expert had reviewed the autopsy results.  Fourth, it argues that it was improperly precluded from submitting its expert report.

We begin with a review of the relevant law.  In an occupational disease case, a claimant has the burden of proving all the necessary elements to support an award of benefits. *Ferraccio v. Workmen's Compensation Appeal Board (Intech Construction Company, Inc.)*, 646 A.2d 65 (Pa. Cmwlth. 1994). Section 301(d) of the Workers' Compensation Act (Act)[4] establishes the threshold requirement for occupational disease benefits:

> Compensation for silicosis, anthraco-silicosis, coal worker's pneumoconiosis or asbestosis, shall be paid only when it is shown that the employe has had an aggregate employment of at least two years in the Commonwealth of Pennsylvania, during a period of ten years next preceding the date of disability, in an occupation having a silica, coal or asbestos hazard.

77 P.S. §412.  This Court has explained that Section 301(d) "requires a claimant to prove nothing more than employment for the stated number of years in an occupation having such a hazard."  *Westinghouse Electric Corporation v.*

---

[3] This Court's review of a workers' compensation adjudication determines whether an error of law or a constitutional violation was committed or whether the findings of fact are supported by substantial, competent evidence.  *Myers v. Workers' Compensation Appeal Board (University of Pennsylvania and Alexsis, Inc.)*, 782 A.2d 1108, 1110 n. 1 (Pa. Cmwlth. 2001).

[4] Section 301(d) of the Act of June 2, 1915, P.L. 736, added by the Act of October 17, 1972, P.L. 930, *as amended*, 77 P.S. §412.

8

*Workmen's Compensation Appeal Board (Phillips)*, 506 A.2d 978, 979 (Pa. Cmwlth. 1986).

The issue of whether an occupational hazard exists is a question of fact. *A.C. Moyer Company v. Workmen's Compensation Appeal Board (Bryner)*, 445 A.2d 1354, 1355 (Pa. Cmwlth. 1982). The WCJ is the fact finder with the responsibility for "witness credibility and evidentiary weight." *Shannopin Mining Company v. Workers' Compensation Appeal Board (Sereg)*, 11 A.3d 623, 627 (Pa. Cmwlth. 2011). As such, the WCJ "is free to accept or reject, in whole or in part, the testimony of any witness, including medical witnesses." *Id.* (quoting *Griffiths v. Workers' Compensation Appeal Board (Red Lobster)*, 760 A.2d 72, 76 (Pa. Cmwlth. 2000)).

In its first issue, Employer contends that Claimant's evidence did not establish exposure to asbestos. Claimant's testimony showed no more than the fact that Decedent came home on some days dirtier than others. Baranyai testified about Decedent's exposure at a single job site. Finally, Garrison testified that Decedent was not involved with asbestos abatement and "guaranteed" Claimant was not exposed to asbestos in his work.

Claimant responds that Garrison actually testified that Decedent was exposed to asbestos on job sites "[f]rom time to time." Garrison Deposition, N.T. 19; R.R. 174a. Garrison also confirmed that Decedent reported the presence of asbestos at a job site on several occasions. Garrison conceded that Decedent "wrote a letter confirming that he personally examined the ceiling in a school and he noted that the materials that he was directly in contact with on the ceiling … needed to be analyzed [because he thought it was] asbestos[.]," and subsequent testing confirmed the presence of asbestos. Garrison Deposition, N.T. 35-36; R.R.

9

190a-91a, 196a. Garrison agreed that there were numerous letters "with similar type notations about those types of findings." Garrison Deposition, N.T. 36; R.R. 191a. In short, Garrison's testimony generally supported a finding that Decedent was exposed to asbestos in his work, notwithstanding his "guarantee" that Decedent was not exposed to asbestos in the workplace.

Employer does not challenge any of the WCJ's factual findings, which included a finding that Decedent worked on job sites where asbestos was present; that Decedent found asbestos in inspections; that Employer's 2001 records established asbestos at numerous locations at a job site where Decedent worked; that in 2002 Decedent came in contact with asbestos at another job site; and that the record contained "many similar documents with similar notations[.]" WCJ Decision of 4/23/14, Finding of Fact No. 3(d). The WCJ specifically rejected Garrison's "guarantee" that Decedent was not exposed to asbestos. WCJ Decision of 4/23/14, Finding of Fact No. 9. The issue of whether a hazard exists is a question of fact, and the WCJ is the finder of fact and credibility. *Shannopin Mining Company,* 11 A.3d at 627; *A.C. Moyer Co.*, 445 A.2d at 1355

In its claim that Claimant's evidence was insufficient to prove asbestos exposure, Employer makes several points. Employer notes that Claimant was only aware that Decedent came home dirtier when he worked outside the office; that Baranyai testified about only one job site; and that Garrison stated, indeed "guaranteed," that Decedent had not been exposed to asbestos. However, Employer ignores the other evidence of record that demonstrated Decedent's workplace exposure to asbestos as well as the WCJ's specific rejection of Garrison's guarantee. In effect, Employer asks this Court to reweigh the evidence, which we cannot do. We reject Employer's first argument.

10

In its second issue, Employer contends that Claimant's medical evidence was incompetent because there was no correlation between Decedent's job as an architect and the work sites described in the studies referenced by Dr. Frank. Further, Dr. Frank's belief that right-sided colon cancer is linked to asbestos is not universally accepted. Claimant counters that the WCJ found that Decedent was exposed to an asbestos hazard at work and that his opinion on causation is supported by numerous studies.

In its challenge to Dr. Frank's competency, Employer argues that the job sites described in the studies relied upon by Dr. Frank were different than the ones where Decedent worked. There is nothing in the record to support this contention. Likewise, Employer does not cite any authority for its proposition that Decedent's professional occupation made it unlikely that his exposure to asbestos was sufficient to result in colon cancer. As we explained in *County of Allegheny (Department of Aviation) v. Workers' Compensation Appeal Board (Jernstrom)*, 848 A.2d 165, 172 n.14 (Pa. Cmwlth. 2004),

> the asbestos occupational hazard presents a factual challenge unlike that presented by silica. Coal dust is not ubiquitous; it is in coal mines. By contrast asbestos is ubiquitous.

We also explained that it was the claimant's burden to show "employ[ment] for two years (out of the ten years preceding his disability), … in the same occupation ... and this occupation exposed him to an asbestos hazard." *Id.* at 172.

Here, Claimant established that Decedent worked as an architect for over 20 years with Employer and that his occupation exposed him to asbestos within the relevant time period. Dr. Frank reviewed Decedent's work records and found that they reported an exposure to asbestos. Dr. Frank opined that this exposure caused the colon cancer.

11

We reject Employer's claim that Dr. Frank's testimony was incompetent. Dr. Frank testified that most colon cancers originate in the left side of the colon and that Decedent's originated on the right side of his colon. Dr. Frank then stated that "[i]t's not universal that [asbestos exposure] only causes right-sided colon cancer but there was one study that found that right-sided colon cancers were most linked to asbestos." Dr. Frank Deposition, N.T. 19; R.R. 303a. However, this was not the sole basis for Dr. Frank's causation opinion or for the WCJ's decision to credit Dr. Frank. Rather, Dr. Frank based his opinion on numerous facts: Decedent's youth, his lack of a family history of colon cancer, a review of Decedent's medical records, and a review of the testimony and the documentary evidence of Decedent's work-related exposure to asbestos.

In its third issue, Employer challenges Decedent's autopsy results. Employer Brief at 4. Employer notes that the Board made a material mistake when it stated that Dr. Frank had "reviewed the autopsy results" because, in fact, he reviewed the "hospital autopsy summary." Employer Brief at 39. In support, Employer notes that Dr. Frank stated that he did not look at Decedent's tissue samples because he is not a pathologist. Dr. Frank Deposition, N.T. 53; R.R. 337a.

Employer's argument here is difficult to follow. Dr. Frank's statement that he did not "review tissue samples" does not mean that he did not "review" the autopsy report. It simply suggests that he did not do an independent evaluation of the autopsy tissue samples. The Board's statement that Dr. Frank "reviewed autopsy results" did not imply an examination of tissue samples. Board Adjudication at 13. In any case, Employer does not explain why it matters that Dr. Frank did not personally examine tissue samples.

Finally, Employer argues that the WCJ abused her discretion in precluding Employer from presenting a medical expert. Employer complains that it took a long time to secure the autopsy results and lab samples. It should not have been deprived of the opportunity to present its own medical expert. Employer discusses neither WCJ Burman's rulings nor the timeline of the case in general. Claimant presented the Court with the actual timeline of events in a Supplemental Reproduced Record (S.R.R. __).

The WCJ determines whether "late medical testimony should be allowed into evidence." *Atkins v. Workers' Compensation Appeal Board (Stapley in Germantown)*, 735 A.2d 196, 199 (Pa. Cmwlth. 1999). The WCJ's handling of the proceeding will not be overturned absent a showing of an abuse of that discretion. *Id*. Claimant's expert was deposed on January 30, 2013, which gave Employer until April 30, 2013, to present an expert for deposition. Employer requested a 90-day extension which was granted. Accordingly, WCJ Burman rescheduled the final date of hearing to June 18, 2013.

At the June 18, 2013, hearing, Employer requested another continuance, and it was granted to September 16, 2013, at which point the WCJ ordered that the record would automatically close. At the June hearing, the WCJ ordered Claimant's brief to be filed on October 16, 2013, and Employer's 30 days thereafter to ensure that Employer would produce an expert report no later than September 16, 2013. On August 26, 2013, WCJ Burman notified the parties that a hearing would be held on November 26, 2013, but that "if your brief is received before above date, do not attend this hearing." S.R.R. 2b. Employer requested the hearing be rescheduled "due to a personal matter relating to the Thanksgiving

13

holiday[;]" WCJ Burman rescheduled the hearing to December 10, 2013. S.R.R. 3b.

On December 9, 2013, the parties were notified of WCJ Burman's death one day earlier. Employer filed a notice of deposition of Michael J. Warhol, M.D., which it scheduled for January 7, 2014. S.R.R. 6b. At this point, the record had been closed for months, and Employer had not yet produced a medical report from Dr. Warhol or any other medical expert.

On December 10, 2013, the parties appeared before WCJ Karen Wertheimer. Employer sought leave to reopen the record in order to take Dr. Warhol's medical deposition, and Claimant objected. On January 8, 2014, WCJ Wertheimer denied Employer's request. As explained in her decision of April 23, 2014, she found that Employer attempted to take advantage of WCJ Burman's death by deliberately mischaracterizing the purpose of the December 10, 2013, hearing.

Employer contends it needed additional time to secure autopsy results and lab samples, but it does not explain when it requested this information or received it. Employer appears not to have made these points to the WCJ. In any case, Employer does not refute the WCJ's conclusion that Employer tried to manipulate the December 10th hearing to set aside earlier rulings in the case and, accordingly, we reject Employer's final assertion of error.

Accordingly, the order of the Board is affirmed.

_____
MARY HANNAH LEAVITT, Judge

14

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Garrison Architects and Travelers   :
Insurance Company,   :
                Petitioners   :
  :
            v.   :   No. 1095 C.D. 2015
  :
Workers' Compensation Appeal   :
Board (Piatetsky),   :
              Respondent   :

# **O R D E R**

AND NOW, this 22nd day of January, 2016, the order of the Workers' Compensation Appeal Board dated June 18, 2015, in the above-captioned matter is AFFIRMED.

_____
MARY HANNAH LEAVITT, Judge